Donald W. SEGRETI, Jane E. Segreti, Darrell K. Seigler and BC3, Inc., an Illinois corporation, Plaintiffs,

v.

David C. LOME, individually, Phoenix Real Estate Corporation, an Illinois corporation, Richard Deck, individually, and Enterprise Savings Bank, a federally chartered savings association, Defendants.

No. 90 C 1962.

United States District Court, N.D. Illinois, E.D.

Oct. 16, 1990.

Daniel J. Bute, Ottawa, Ill., for plaintiffs.

Michael J. Kralovec, James B. Ford, Feiwell, Galper & Lasky, Ltd., Jeffrey Steinback, Genson, Steinback & Gillespie, Chicago, Ill., for defendants Lome and Phoenix.

Sheldon T. Zenner, Lynn Urkov Thorpe, Antony J. McShane, Katten Muchin & Zavis, Chicago, Ill., for defendants Deck and Enterprise.

## ORDER

BUA, District Judge.

Plaintiffs' complaint contains claims of common law fraud as well as gratuitous counts of Racketeer Influenced and Corrupt Organizations Act (RICO) violations. Defendants David C. Lome and Phoenix Real Estate Corp. have moved to dismiss the complaint in its entirety. Defendants Richard Deck and Enterprise Savings Bank have moved to dismiss Counts I–III of the complaint. For the reasons discussed herein, this court dismisses Counts I–III of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Counts IV–VII pursuant to Fed.R. Civ.P. 12(b)(1).

## FACTS

As this case comes to the court on a motion to dismiss, the following well-pleaded allegations are accepted as true. *Ed Miniat, Inc. v. Globe Life Ins. Group Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). On May 17, 1986 and September 13, 1986, plaintiffs Donald W. Segreti and Jane E. Segreti ("Segretis") purchased six properties in Aurora, Illinois from defendants David C. Lome and Phoenix Real Estate Corp. ("Phoenix"). On November 9, 1987 and November 24, 1987, plaintiff BC3, Inc. ("BC3") purchased ten properties in Aurora, Illinois from Lome and Phoenix. At some unidentified time before these purchases, Lome and Phoenix apprised the Segretis, BC3, and plaintiff Darrell K. Seigler of the appraisal values, market values, and equity values of the properties. Further, Lome and Phoenix informed plaintiffs of the total outstanding loan amounts associated with the properties. Those loan amounts consisted of first and second mortgages. The first mortgages on the properties were obtained by Lome and Phoenix from defendants Richard Deck and Enterprise Savings Bank ("ESB") in order to finance their initial purchase of the properties. The second mortgages on the properties resulted from transactions between the original owners of the properties and defendants Lome and Phoenix. Deck and ESB prepared all the documents associated with these transactions. In their purchase of the properties, Lome and Phoenix paid the original owners partially with cash and partially with second mortgages. The cash paid to the owners came from the monies obtained by Lome and Phoenix through the first mortgages secured on the properties. The remainder of the monies from the first mortgages was kept by Lome and Phoenix. Lome and Phoenix gave the second mortgages to the owners. When the Segretis and BC3 purchased the properties from Lome and Phoenix, they and Seigler assumed the first mortgages held by ESB and the second mortgages held by the original owners of the properties.

Plaintiffs Segretis, BC3 and Seigler now claim that they were defrauded by Lome, Phoenix, Deck and ESB. In support of this claim, plaintiffs allege that Lome and Phoenix made false statements concerning the values of the properties which plaintiffs relied upon in their purchase of the properties and their assumption of the first and second mortgages. Deck and ESB were allegedly aware of the actions performed

and misrepresentations made by Lome and Phoenix, but failed to inform plaintiffs. Based on these allegations, plaintiffs assert four counts of common law fraud against defendants, Counts IV–VII. In addition, plaintiffs assert three RICO claims under 18 U.S.C. §§ 1962(a), 1962(c) and 1962(d), Counts I–III.

## DISCUSSION

### Counts I–III

In Counts I–III, plaintiffs Segretis, BC3, and Seigler claim violations of RICO under §§ 1962(a), 1962(c), and 1962(d). The violations outlined in these RICO sections represent variations on a common theme. 18 U.S.C. § 1962(a) makes it unlawful for any person who has received income from a pattern of racketeering activity to use or invest that income in an enterprise associated with interstate commerce. 18 U.S.C. § 1962(c) prohibits a person associated with an enterprise engaged in interstate commerce from conducting or participating in the conduct of that enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(d) makes it unlawful to conspire to perform these acts. To state a claim under all these sections, a plaintiff must properly allege as part of his complaint certain core elements—namely, the existence of (1) a person; (2) a pattern of racketeering activity; and (3) an enterprise.

In this case, plaintiffs allege the existence of an enterprise and a pattern of racketeering. In support of their motion to dismiss, defendants argue that plaintiffs have not pled sufficient facts to demonstrate the existence of an enterprise or a pattern of racketeering activity. This court agrees with defendants with regard to one element: plaintiffs Segretis, BC3 and Seigler have not properly alleged the existence of an enterprise.

■ An "enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir.1990). The existence of an enterprise is established by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). While a plaintiff need not allege in his complaint information sufficient to *prove* the existence of an enterprise, a plaintiff must *identify* the enterprise. And, such identification must necessarily include details about the structure of the enterprise. *See Jennings*, 910 F.2d at 1439–1440, 1441.

■ In this case, plaintiffs' overly broad allegations of an enterprise are insufficient to withstand defendants' motion to dismiss. In their complaint, plaintiffs allege the enterprise element merely by asserting in a conclusory fashion that defendants Lome, Phoenix, Deck and ESB constitute an enterprise. *See* Complaint ¶ 42. Although the complaint contains several references to defendants' names, no where do plaintiffs identify anything approaching a continuous structured organization. The closest plaintiffs come to breathing life into the alleged enterprise is their assertion that the enterprise can be identified by the conduct and activities of the defendants. *See Id.* Unfortunately for plaintiffs, the identification of an enterprise by reference to the activities and conduct of defendants is not sufficient to state a claim. An enterprise must be "an entity separate and apart from the pattern of racketeering activity in which it engages." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2529. "[A]lthough a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings*, 910 F.2d at 1440.

Plaintiffs Segretis, BC3 and Seigler dig themselves into an even deeper hole by attempting to define the enterprise through what it supposedly did. According to plaintiffs, Lome and Phoenix made several misrepresentations. Plaintiffs also claim that Deck and ESB knew that Lome and Phoenix made these statements. Even if Lome, Phoenix, Deck and ESB engaged in these

activities, the most plaintiffs may be able to establish is the existence of a pattern of racketeering activity. There is nothing in plaintiffs' complaint which suggests that Lome and Phoenix participated in an ongoing structured organization with Deck and ESB. From the claims in the complaint, this court knows nothing about the scope and nature of the enterprise. Plaintiffs do not identify when the enterprise started, how long the enterprise continued or how the defendants fit into the enterprise. *Cf. Valley Forge Ins. Co. v. Colello*, No. 89 C 9016, slip op. at 7–8, 1990 WL 141461 (N.D. Ill. Sept. 18, 1990) (sufficient facts supplied to allege existence of an enterprise where plaintiff set out the date of the formation of the enterprise, names of members other than defendants, and additional details concerning the enterprise's structure). In short, plaintiffs have failed to identify what the enterprise is.

Since plaintiffs Segretis, BC3 and Seigler have not sufficiently alleged the existence of an enterprise, none of their RICO claims can survive defendants' motion to dismiss. *See Latimer v. Hall Financial Group, Inc.*, No. 90 C 0156, slip op. at 29–31, 1990 WL 133225 (N.D.Ill. August 31, 1990) (conclusory allegation that defendants constituted an enterprise insufficient to state a claim under RICO).[1] Accordingly, this court dismisses Counts I–III.

*Counts IV–VII*

In Counts IV–VII, plaintiffs Segretis, BC3 and Seigler allege common law fraud claims. Having dismissed the RICO counts, this court no longer has jurisdiction over the pendent state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Accordingly, Counts IV–VII are dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.

1. Plaintiffs' RICO claims are deficient in several other respects. Plaintiffs' § 1962(a) claim is lacking because it does not allege injury caused by reason of the use or investment of income derived from a pattern of racketeering activity. *See Palumbo v. I.M. Simon & Co*, 701 F.Supp. 1407, 1411 (N.D.Ill.1988); *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods Inc.*, 720 F.Supp. 714, 717 (N.D.Ill.1989). And, plaintiffs' § 1962(d) claim is suspect because of its failure to allege an agreement to engage in a pattern of racketeering activity as well as an agreement to engage in actions proscribed by RICO. *See United States v. Neapolitan*, 791 F.2d 489, 498–499 (7th Cir.), *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). It is not sufficient to conclusory allege that defendants conspired, without providing facts setting forth the existence of an agreement. Plaintiffs' skeletal pleadings simply do not support an allegation of conspiracy.