Jose and Rosa ROLO; and Dr. William and Roseanne Tenerelli, Plaintiffs,

v.

CITY INVESTING COMPANY LIQUIDATING TRUST, et al., Defendants.

Civ. A. No. 90–4420 (DRD).

United States District Court, D. New Jersey.

Aug. 24, 1995.

Roy A. Heimlich, Herbert I. Deutsch, Vincent R. Coffey, Alfred N. Metz, Deutsch & Frey, New York City, William O'Brien, Glenn P. Callahan, Callahan, Delany & O'Brien, Voorhees, NJ, for plaintiff.

Paul M. Dodyk, Cravath, Swaine & Moore, New York City, Douglas S. Eakeley, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for defendants City Investing Co., Liquidating Trust, AmBase Corp., Carteret Bancorp. Inc., George T. Scharffenberger, Marshall Manley, Edwin I. Hatch and Eben W. Pyne.

Steven M. Edwards, Davis, Scott, Weber & Edwards, New York City, for defendant David F. Brown.

Joel Hirschhorn, Coral Cables, FL, for defendant Robert Ehrling.

Robert T. Wright, Elizabeth C. Barber, Mershon, Sawyer, Johnston Dunwody & Cole, Miami, FL, Joseph L. Buckley, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, NJ, for defendants Reubin O'D. Askew, Howard L. Clark, Jr., Charles J. Simons and Peter R. Brinckerhoff.

Peter Perretti, Nicholas DeB. Katzenbach, Jeffrey J. Miller, Riker Danzig Scherer Hyland & Perretti, Morristown, NJ, for defendants Cravath, Swaine & Moore and David G. Ormsby.

Joseph J. Schiavone, Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, NJ, John W. Little, III, Steel Hector & Davis, West Palm Beach, FL, for defendant Federal National Mortgage Association.

George T. Ford, Siff Rosen & Parker, Newark, NJ, George Kielman, Federal Home Loan Mortgage Co., McLean, VA, for defendant Federal Home Loan Mortgage Corp.

Peter Homer, Homer & Bonner, Miami, FL, Edward J. Boccher, Mudge Rose Guthrie Alexander & Ferdon, Parsippany, NJ, for defendant Citizens and Southern Trust Company (Florida), N.A.

Gerald J. Houlihan, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, Miami, FL, Keith Harris, Braff Harris & Sukoneck, Livingston, NJ, for defendant Chase Federal Bank.

Kevin M. Hart, Stark & Stark, Princeton, NJ, for defendant Federal Deposit Insurance Corporation.

Steven M. Richman, Herrick, Feinstein, Princeton, NJ, George J. Wade, Thomas F. Swift, Shearman & Sterling, New York City, for defendant Citicorp Real Estate, Inc.

Herschel E. Sparks, Jr., Hughes, Hubbard & Reed, Miami, FL, Clyde A. Szuch, Pitney Hardin Kipp & Szuch, Morristown, NJ, for defendant The Home Insurance Company.

Vincent E. Reilly, McElroy, Deutsch & Mulvaney, Morristown, NJ, for defendant Secor National Bank.

Louis Mrachek, Gunster, Yoakley & Stewart, West Palm Beach, FL, for defendant National Bank of Canada.

Louis W. Childress, Brown Childress & Lofton, East Orange, NJ, John H. Denton, Connell, Foley & Geiser, Roseland, NJ, for defendant RTC, as Receiver for defendant Carteret Savings Bank, F.A.

Steven H. Reisberg, Wilkie, Farr & Gallagher, New York City, Robert E. Bartkus, Pinto, Rodgers & Kopf, Morristown, NJ, for defendant Prudential Insurance Company of America.

Steven I. Adler, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ, for defendant First National Bank of Boston.

James J. Hagan, Simpson Thacher & Bartlett, New York City, for defendant PaineWebber, Inc.

Warren H. Colodner, Kirkpatrick & Lockhart, New York City, for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Joseph A. Boyle, Kelley Drye & Warren, Parsippany, NJ, Alan J. Kluger, Kluger Peretz Kaplan & Berlin, Miami, FL, for defendant Greyhound Financial Corporation.

Robert L. Young, Carlton Fields Ward Emmanuel Smith & Cutler, Orlando, FL, Peter J. Boyer, Blank Rose Comisky & McCauley, Cherry Hill, NJ, for defendant Harbor Federal Savings and Loan Association.

Marbury Rainer, Parker Hudson Rainer & Dobbs, Atlanta, GA, James A. Scarpone, Stephen L. Dreyfuss, Hellring, Lindeman, Goldstein, & Siegal, Newark, NJ, for defendant StanChart Business Credit, Inc.

David T. Eames, G. Wade Leak, Bodian & Eames, New York City, for Lloyds Bank, PLC.

DEBEVOISE, Senior District Judge.

On April 4, 1995, the Court of Appeals vacated the order of dismissal in this case and remanded for reconsideration in light of *Jaguar Cars, Inc. v. Royal Oaks Motor Car. Co.*, 46 F.3d 258 (3d Cir.1995). The parties submitted extensive briefs to assist reconsideration of the order of dismissal. In addition, plaintiffs filed a motion for leave to serve a second amended and supplemental complaint and to add and drop parties.

I conclude that (i) *Jaguar* changed the law of this Circuit upon which I relied as one of the grounds for dismissal of plaintiff's RICO claims; (ii) other grounds for the dismissal of the RICO claims were unaffected by *Jaguar;* (iii) *Jaguar* has no effect upon the grounds for dismissal of plaintiffs' non-RICO claims; (iv) the remand order did not contemplate that plaintiffs be allowed to reconstitute and restructure their action through the vehicle of an amended complaint and the addition and deletion of parties; (v) the motion to serve a second amended and supplemental complaint and to add and drop parties should

not be considered; and (vi) although the ruling in *Jaguar* requires modification of the December 27, 1993 opinion, it does not require modification of the order of dismissal. A new order will be entered dismissing the action as to all defendants.

## I. BACKGROUND

A detailed procedural history of this case ("Rolo II") and its predecessor case ("Rolo I") is set forth in the opinion which accompanied the order of dismissal under reconsideration here. *Rolo v. City Investing Company Liquidating Trust*, 845 F.Supp. 182 (D.N.J. 1993). Similarly, there is contained in that opinion a recital of the facts upon which plaintiffs rely to establish their various claims. Except as necessary to explain the reasons for the conclusions on reconsideration, these facts will not be repeated here.

In essence, the plaintiffs in this action (Jose and Rosa Rolo and Dr. William and Roseanne Tenerelli) were among the thousands of persons who purchased Florida real estate from General Development Corporation ("GDC"). The final version of their complaint, which was dismissed on December 27, 1993, asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), The Interstate Land Sales Full Disclosure Act ("Land Sales Act"), § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder ("Securities Act"), as well as various state law causes of action.

The complaint named 35 defendants, each of whom fell into one or more categories. The defendants and the categories are described in some detail in the 1993 opinion.[1] The categories are: (i) "City Defendants," consist of corporations and individuals alleged to have owned or exercised control over GDC. (ii) "Inside Director Defendants," consist of the four persons alleged to have had the greatest control over GDC. They are also characterized as City Defendants and Director Defendants. (iii) "Director Defendants" are the persons who were directors of GDC. (iv) "Financing Defendants" are the banks and brokerage houses which provided loans and other forms of financing to GDC, often receiving as security blocks of mortgages given by land purchasers. (v) "Mortgagee Defendants" are the institutions which purchased large blocks of purchase money mortgages derived from GDC land sales. (vi) "Lot Contract Defendants" are corporations which purchased large blocks of lot contracts and notes derived from GDC land sales.

In May 1993, the defendants moved to dismiss the First Amended Complaint in *Rolo II* under Fed.R.Civ.P. 12(b)(6) and certain defendants moved to dismiss the Land Sales Act and common law claims under Rule 12(b)(2) for lack of jurisdiction. At the same time, plaintiffs filed a motion for class certification. By that time plaintiffs had dropped many of their state law claims and the only remaining claims were claims under RICO, the Land Sales Act, the Securities Act and common law fraud.

In the course of responding to the motions to dismiss, plaintiffs in their brief revised their RICO allegations which defined the "enterprise" involved. Rather than requiring plaintiffs to move formally to file another amended complaint, I treated the revised RICO allegations as a proposed Second Amended Complaint and decided the motions as if they were directed to the Second Amended Complaint as well as the First Amended Complaint.

The December 27, 1993 opinion contained the following determinations:

### Land Sales Act (Count III)

1. Persons who can be held liable under the Land Sales Act include not only a developer (such as GDC) and its agents, but also a person who provides knowing assistance to or engages in active participation in a fraudulent land sale scheme. *Rolo, supra* at 219, 220.

2. Applying that standard to the allegations of the Second Amended Complaint, (i) the motions of the Mortgagee Defendants, the Lot Contract Defendants and the financ-

---

1. The *Rolo II* amended complaint did not name GDC as a defendant, because it was in Chapter 11 bankruptcy proceedings and actions against it were stayed.

ing Defendants to dismiss the Land Sales Act claims relying on the aiding and abetting theory were granted, (ii) the similar motions of defendants Askew, Clark, Simons, Brinckerhoff and AmBase were granted, (iii) the similar motions of defendants City Trust, Scharffenberger, Manley, Hatch and Pyne were denied, and (iv) the similar motions of defendants Cravath and Ormsby were denied.

3. All of plaintiffs' claims against all defendants under the Land Sales Act were barred by the Land Sales Act statute of limitations.

### Civil RICO (Count I)

1. The amended complaint failed to allege the existence of a RICO enterprise because it defined the enterprise as the racketeering activity itself.

2. Plaintiffs' revised RICO allegations set forth in their briefs (which were deemed to have become a part of an amended complaint) effectively redefined the enterprise by asserting that the enterprise was GDC and its subsidiaries.

3. However, plaintiffs failed to plead that the RICO "persons" (GDC's officers, directors and controlling shareholders [2]) were separate and distinct from the enterprise (GDC) as required by such Third Circuit opinions as *Hirsch v. Enright Refining Co.,* 751 F.2d 628 (3d Cir.1984), *Petro–Tech, Inc. v. Western Co.,* 824 F.2d 1349 (3d Cir.1987), and *Brittingham v. Mobil Corp.,* 943 F.2d 297 (3d Cir.1991).

4. Because plaintiffs failed to plead RICO persons separate and distinct from the enterprise, the RICO claim under § 1962(c) was dismissed.

5. The RICO conspiracy claims under § 1962(c) was dismissed both because of the dismissal of the underlying substantive RICO claim and because of failure to plead adequately the existence of a conspiracy.

6. Consistent with the Supreme Court's decision in *Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), it was held that even if plaintiffs' allegations

stated a RICO claim, their complaint asserting aider and abettor liability against the bulk of the defendants (all Mortgagee, Financing and Lot Contract Defendants, outside directors Askew, Clark, Simons and Brinckerhoff, AmBase, Home, Ormsby, Carteret and Cravath) did not allege that these defendants participated, either directly or indirectly in the conduct or the affairs of GDC and would have to be dismissed. Further, even if the complaint had alleged that these defendants participated in the affairs of the enterprise as required by *Reves,* it failed to meet essential pleading requirements for aider and abettor claims, *e.g., Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 791 (3d Cir.1982), *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983).

7. *Reves* would not bar a RICO claim against the officers and inside directors of GDC, namely, Brown, Ehrling, Scharffenberger, Manley, Hatch and Pyne because there were sufficient allegations in the Amended Complaint that they conducted or participated in the affairs of the enterprise, GDC.

8. Even if the Amended Complaint stated a RICO claim, it would have been barred by RICO's four-year statute of limitations. The Rolo plaintiffs purchased their lot from GDC by contract dated February 27, 1974; the Tenerelli plaintiffs purchased 12 lots and a house in various GDC communities between 1972 and 1978. The allegations of the Amended Complaint established that plaintiffs knew or should have known that they had a RICO claim prior to November 8, 1986 (four years prior to the date the original complaint was filed) and there were no allegations of further injury which would allow postponement of the accrual of a RICO cause of action.

### Securities Act (Count II)

1. Under the allegations of the Amended Complaint, the land sales contracts, the house purchase contracts and the mortgage notes securing plaintiffs' land purchases were not securities within the meaning of § 10 of the 1934 Act or Rule 10b–5, requiring dismissal of the Securities Act claims.

---

**2.** City Trust was the only controlling shareholder named as a defendant in the action.

2. Further, plaintiffs' Securities Act claims were untimely under the one-year/three-year statute of limitations prescribed in *In re Data Access Systems Secs. Litig.,* 843 F.2d 1537, 1550 (3d Cir.) *(en banc),* cert. denied sub nom., *Vitiello v. Kahlowsky and Co.,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), a further ground for dismissal.

### Common Law Fraud (Count VIII)

Since all three federal claims were dismissed for failure to state a claim, the common law claims were dismissed pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### Rule 12(b)(2) Motions

In light of the substantive rulings in the case and lack of personal contacts with New Jersey, Scharffenberger, Manley, Hatch and Pyne's motion to dismiss Counts III (Land Sales Act) and Count VII (common law fraud) for lack of personal jurisdiction was granted.

As a result of the foregoing determinations, plaintiffs' motion for class certification was rendered moot and the Amended Complaint was dismissed as to all defendants who had filed motions to dismiss. Two defendants, Carteret Bancorp and CSB, had not moved. In due course, they filed appropriate motions to dismiss, and the Amended Complaint was dismissed as to them.

Plaintiffs appealed dismissal of their RICO and Land Sales Act claims.

On November 8, 1994, the Third Circuit affirmed "substantially for the reasons" given in the December 27, 1993 opinion. Thereafter, plaintiffs filed a Petition for Rehearing and Suggestion for Rehearing In Banc, seeking rehearing of the panel's affirmance of the dismissal of plaintiffs' RICO claims. Specifically, the petition challenged the line of Third Circuit precedent with respect to the "person/enterprise" distinction requirement of § 1962(c) RICO claims which was followed in the December 27, 1993 opinion.

While plaintiffs' petition was pending, a panel of the Third Circuit held that intervening Supreme Court precedent had overruled Third Circuit rulings with respect to the "person/enterprise" distinction. *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258 (3d Cir.1995).

Thereupon, the Third Circuit remanded the case for reconsideration in light of *Jaguar.*

## II. RECONSIDERATION

■ 1. *The Scope of Reconsideration:* The first question to be decided is the nature of the reconsideration which the Third Circuit mandated.

Plaintiffs suggest that reconsideration contemplates permitting them to file "a Seconded Amended and Supplemental Complaint, and to add and drop parties, so that plaintiffs may add additional plaintiffs with claims that are clearly timely, and restate their claims in light of *Jaguar Cars.*" (Plaintiffs' Memo, p. 1.). Defendants, on the other hand, suggest that reconsideration contemplates simply re-examination of the December 27, 1993 ruling to determine what effect *Jaguar* has upon the rationale of the opinion and upon the judgment entered thereon.

Plaintiffs filed a motion for leave to file a Second Amended and Supplemental Complaint which was accompanied by a proposed complaint (the "Proposed Complaint"). The Proposed Complaint contains two RICO counts, an Interstate Land Sales Act count and a common law fraud count. It does not contain a Securities Act count. It names as defendants the same corporate entities and individuals as were named in the complaint which was dismissed (substituting take-over agencies for failed banks) (and including Oxford First Corp. and The Oxford Finance Companies as to which automatic bankruptcy stays are in effect). The Proposed Complaint describes the same fraudulent scheme beginning in the 1950's which was described in the dismissed complaint. General allegations are added in an attempt to remedy deficiencies of the dismissed complaint.

The Proposed Complaint may implicate a fundamental change in the nature of the action. Like the dismissed complaint, the Proposed Complaint styles itself as "a class action on behalf of all persons who purchased or contracted to purchase lots and/or houses

from GDC and who are now members of the North Port Out–Of–State Lot Owners Association" (an organization having more than 10,000 members).

The original plaintiffs entered into contracts with, or purchased lots from, GDC in February 1974 (in the case of the Rolos) and between 1972 and 1978 (in the case of the Tenerellis). The Proposed Complaint drops the former plaintiffs altogether and names eight new plaintiffs. According to the Proposed Complaint, the earliest date on which a new plaintiff entered into a transaction with GDC was one 1987 lot purchase and the rest of the transactions were in 1988 and 1989.

While this amendment might eliminate the statute of limitations problems for the eight new plaintiffs, it creates a host of new problems and would likely transform the nature of the action. It must be remembered that SEC-mandated disclosure documents released in 1988 and 1989 disclosed numerous lawsuits against GDC and certain of its officers, as well as civil and criminal investigations concerning the matters which are the subject of the complaint. It must also be remembered that on August 8, 1989, other members of the putative class filed a similar suit asserting RICO and securities fraud claims. The eight new plaintiffs proceeded with their transactions with GDC in the face of those developments.

According to information provided by certain of the defendants, four of the proposed new plaintiffs have released all claims arising out of home purchases from GDC against the City Defendants, Ormsby, Cravath, Swaine and Moore and all other GDC officers, directors, employees and agents by virtue of their participation in a restitution program for home purchasers instituted as part of the final judgment in *U.S. v. General Dev. Corp.*, Case No. 90–879–Civ–Nesbitt (S.D.Fl.1990). The information provided by defendants suggests that a large proportion of home purchasers whose claims fall within the limitations period have effectively released defendants from § 1962(c) claims.

Those circumstances could affect fundamentally the nature of the claims, the nature of the defenses and the suitability of these eight proposed plaintiffs to represent the proposed class, most of whose members, like the Rolos and Tenerellis, must have purchased lots or entered into contracts before the details of the fraudulent scheme became public knowledge.

I do not believe that the Third Circuit intended that reconsideration be on the basis of an amendment to an already much-amended complaint.

Faced with the difficult problem that the corporations and individuals who were most involved in the alleged fraudulent scheme were bankrupt or indicted, plaintiffs cast a wide net seeking entities who could compensate them for their losses and seeking legal theories upon which to base their claims. On August 8, 1989, some 3,000 plaintiffs, including the Rolos, filed *Rolo I* against GDC, asserting its federal and common law claims. On September 7, 1989, plaintiff filed an amended complaint in that action, asserting additional state law claims. After the court granted leave to file a second amended complaint, the action was administratively terminated by reason of GDC's Chapter 11 proceeding.

Plaintiffs filed the present action on November 8, 1990. On May 13, 1991, plaintiffs filed a First Amended Complaint which dropped GDC and an affiliate as defendants but named numerous other persons as defendants. In May of 1993, defendants moved to dismiss the First Amended Complaint under Fed.R.Civ.P. 12(b)(6). Defendants' many briefs argued the issues in a most comprehensive manner. In response, plaintiffs dropped a number of state law claims and, by the time the motions to dismiss were argued, the only remaining claims were claims based upon RICO, the Land Sales Act, the Securities Act and common law fraud.

In response to defendants' comprehensive briefs, plaintiffs submitted equally comprehensive material. No doubt recognizing that their pleading of an enterprise was defective, plaintiffs set forth in their memorandum a new definition of the alleged RICO enterprise. I treated this new definition as a "Second Amended Complaint," *see* 845 F.Supp. at 225. The parties have so treated it in this Court and on appeal. Plaintiffs did

not file a motion to amend or to add new plaintiffs in response to the motions to dismiss. By that late date, the complaint was fully matured and there was no reason to further amend it.

I construe the assignment from the Third Circuit to be to re-examine the December 27, 1993 ruling in the light of *Jaguar* and to determine if the change in the law set forth in *Jaguar* requires a modification of the December 27, 1993 opinion and order.

I do not consider the mandate as requiring consideration of the Proposed Complaint or any other proposed amended complaint.

■ 2. *Jaguar:* Jaguar Cars, Inc. brought a civil RICO action against the operators of one of its dealerships, Theodore Forkecz, Sr., and his sons, Theodore Forkecz, Jr., and Mark Forkecz. Jaguar charged that the defendants had perpetrated a scheme to submit fraudulent warranty claims to Jaguar through their dealership, Royal Oaks Motor Car Company, Inc., in violation of RICO §§ 1962(c) and (d). The jury returned a verdict against Theodore Forkecz, Sr. and Mark Forkecz. The district court absolved Theodore Forkecz, Jr. of RICO violations.

On appeal Theodore Forkecz, Sr., urged (i) that the evidence was insufficient to find him liable for the RICO predicate acts of aiding and abetting mail fraud and (ii) that Jaguar's RICO claims were legally insufficient because Jaguar failed to establish sufficient distinctiveness between the defendant "persons" allegedly liable for the RICO violations and the "enterprise" through which those persons acted.

The second ground required the Third Circuit to re-examine the distinctiveness requirement set forth in cases such as *Hirsch v. Enright Refining Co.,* 751 F.2d 628, 633 (3d Cir.1984) and *Glessner v. Kenny,* 952 F.2d 702, 710 (3d Cir.1991). As the Court stated, "[u]nder this court's interpretation of § 1962(c), as articulated in *Glessner,* Jaguar's RICO claims would fail unless Royal Oaks was either (1) the victim of the defendant's scheme, or (2) a passive tool through which the scheme was conducted." 46 F.3d at 264.

The court concluded that *Jaguar* was indistinguishable from *Glessner,* but nevertheless held that "defendants here are liable under § 1962(c) as persons managing the affairs of their corporation as an enterprise through a pattern of racketeering activity, since this court's application of the distinctiveness requirement to shield corporate officers and directors from § 1962(c) liability does not survive *Reves,* . . . and [*National Organization for Women, Inc. v.*] *Scheidler* [— U.S. —, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)]." 46 F.3d at 265.

Thus, the law in this Circuit now is that, "when officers and/or employees operate and manage a legitimate corporation, and use it to conduct, through interstate commerce, a pattern of racketeering activity, those defendant persons are properly held liable under § 1962(c)." 46 F.3d at 269.

3. *Effect of Jaguar:* The Third Circuit mandate requires reconsideration of the December 27, 1993 opinion and judgment in light of *Jaguar.*

One ground for dismissing the §§ 1962(c) and (d) RICO claims is no longer tenable. The opinion stated, "[b]ecause plaintiffs have failed to plead that the RICO 'persons' in this case [the officers, directors and controlling shareholders of GDC] are separate and distinct from the 'enterprise' [GDC], such pleading cannot withstand defendants' motions to dismiss." 845 F.Supp. at 227. That ruling was based upon holdings in cases such as *Enright* and *Glessner* which *Jaguar* held no longer state the law of the Circuit.

There were, however, other grounds for dismissing the RICO claims which were either unaffected by *Jaguar* or else were confirmed by *Jaguar* or by authoritative cases decided after December 27, 1993. *Jaguar* has no effect upon those portions of the opinion and order which, for reasons independent of the "person-enterprise distinction" required dismissal of the RICO claims either in their entirety or as to particular groups of defendants.

For the reasons set forth in the opinion "plaintiffs' RICO claim would be dismissed as to all moving defendants on the grounds that it is time barred even if the claim were not dismissable on other, substantive grounds." *Rolo,* 845 F.Supp. at 235.

Plaintiffs' aiding and abetting claims were dismissed because plaintiffs' allegations did not meet the "operation or management" test of *Reves v. Ernst & Young,* — U.S. —, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). This was the test which *Jaguar* applied when evaluating Theodore Forkecz, Sr.'s contention that the proofs failed to establish aider and abettor liability against him. *See also Central Bank of Denver v. First Interstate Bank of Denver,* — U.S. —, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

Plaintiffs' aiding and abetting claims (like their RICO conspiracy claims) were also dismissed for failure to plead anything more than general and conclusory allegations of knowledge or participation in a scheme.

The RICO aider and abettor ruling was applicable to most of the defendants (all Mortgagee, Financing and Lot Contract Defendants, outside directors Askew, Clark, Simons and Brinckerhoff, AmBase, Home, Ormsby, Carteret and Cravath, Swaine and Moore).

Thus, even if *Jaguar* had been decided in December 1993 and applied in this case, the plaintiffs' RICO claims would have been dismissed.

Plaintiffs did not appeal the dismissal of their Securities Act claims.

*Jaguar* does not speak to plaintiffs' Land Sales Act claims. Nor does *Jaguar* affect plaintiffs' common law fraud claims which were dismissed pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### III. CONCLUSION

The Third Circuit's mandate "for reconsideration in light of *Jaguar Cars* " does not contemplate that this court entertain a motion by plaintiffs to file still another amended complaint which would reformulate and restructure their action. Plaintiffs' motion for leave to serve a second amended and supplemental complaint and to add and drop parties will, therefore, be dismissed.

Upon reconsideration of the December 27, 1993 opinion and order of dismissal in light of *Jaguar Cars,* it appears that one ground for dismissal of the RICO claims is no longer valid, but that there remain other, independent valid grounds to dismiss the RICO claims. *Jaguar Cars* has no bearing upon the prior dismissal of the Land Sales Act claims, the Securities Act claims and the common law fraud claims.

In these circumstances, a new order will be entered dismissing the complaint as to all defendants.